UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE L. JEANS, | ) | CASE NO. 1:16CV1211 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF | ) | REPORT AND RECOMMENDATION |
| SOCIAL SECURITY, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Bonnie L. Jeans ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on September 16, 2016, Plaintiff asserts that the administrative law judge's ("ALJ") decision finding her not disabled is not supported by substantial evidence because the credibility analysis is flawed. ECF Dkt. #14. Defendant filed a response brief on November 30, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

On September 20, 2012, Plaintiff filed an application for SSI alleging disability beginning May 1, 2008. ECF Dkt. #11 ("Tr.") at 16.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.* Following the denial of her claim, Plaintiff requested a hearing, which

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

was held on February 18, 2015. *Id.* at 31. On April 16, 2015, the ALJ issued a decision denying Plaintiff's claim. *Id.* at 13. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the April 16, 2015, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's April 16, 2015, decision on May 19, 2016. ECF Dkt. #1. On September 16, 2016, Plaintiff filed a brief on the merits. ECF Dkt. #14. Defendant filed a response brief on November 30, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence: Physical

In December 2011, Plaintiff underwent a lumbar fusion at the L4-L5 and L5-S1 levels. Tr. at 290. After the surgery, Plaintiff began physical therapy. *Id.* at 263. Physical therapy notes from June 2012 indicated that Plaintiff could lift amounts no greater than twenty to thirty pounds and was limited in her ability to bend and twist. *Id.* at 263. Additionally, Plaintiff reported improved leg symptoms, but stated that she still experienced pain when sleeping and in the mornings. *Id.* at 264. Plaintiff received bilateral joint injections to treat continued lower back pain on October 15, 2012, and November 6, 2012. *Id.* at 349, 360. In December 2012, imaging revealed that Plaintiff's L4-L5 and L5-S1 levels had not fully fused after the fusion procedure. *Id.* at 323. Based on the non-fusion, it was recommended that Plaintiff continue on her opiates and that she meet with a nurse practitioner that day to inquire about replacing her transcutaneous electrical nerve stimulator ("TENS") unit. *Id.*

In January 2013, Plaintiff described continuous pain and aching without radiation, that was made worse by bending forward, and indicated that she was on Oxycodone and OxyContin for her pain. Tr. at 551. The treatment notes indicate that Plaintiff presented with a body mass index of 33.27. *Id.* Plaintiff reported that the bilateral joint injection she received in November 2012 only provided about one day of relief. *Id.* at 552. Upon examination, Plaintiff's back was symmetric with no abnormal curvature, and her muscle strength was 5/5 in her upper and lower extremities. *Id.* In February 2013, Plaintiff reported that her lower back pain was aggravated by

walking, prolonged standing, bending over, and lying down, and that she continued to have extreme pain following the surgery performed in December 2011. *Id.* at 581. On examination, Plaintiff presented with tenderness to palpation at the lumbosacral junction bilaterally. *Id.* at 582.

As of March 2013, Plaintiff's L4-L5 and L5-S1 levels had still not completely fused, and possible loosening of screws was noted at S1. Tr. at 712. In April 2013, a CT scan of Plaintiff's lumbar spine revealed post-status fusion with partial laminectomy and fusion at levels L4-L5 and L5-S1. Additionally, the CT scan showed right-sided soft tissue density extending into the right epidural space at the L4-L5 level.[3] *Id.* at 585. The treatment notes indicated that this extension "[m]ay reflect scar tissue." *Id.*

In June 2013, Plaintiff described her pain as sharp, burning, intense, intermittent, and chronic, and stated that the pain was made worse by forward flexion and lateral flexion. Tr. at 600. It was noted that Plaintiff showed no signs of opiod intoxication, abuse, addition, or withdrawal. *Id.* Treatment notes from October 2013 state that Plaintiff was still taking Oxycodone and OxyContin for her pain, and felt that this medication regime, along with her TENS unit, was helpful. Tr. at 681. Upon examination, Plaintiff's back was found to be symmetric and her muscle strength was 5/5 in both the upper and lower extremities. *Id.* at 682. It was noted that Plaintiff was functional on her medications and with use of her TENS unit. *Id.* at 683.

In April 2014, Plaintiff indicated that her pain had decreased from 9/10 to 7/10 after undergoing radio frequency ablation. Tr. at 738. On examination, Plaintiff's back was symmetric, with no abnormal curvature, and a normal range of motion. *Id.* at 739. In July 2014, Plaintiff displayed absent reflexes in both upper extremities and decreased strength in both hands. *Id.* at 760. Plaintiff stated that her medications relieved forty percent of her pain in July 2014. Treatment notes from August 2014 indicate that Plaintiff continued to report sharp and

---

[3]Treatment notes from October 2013 cite the April 2013 CT scan results when indicating that Plaintiff was "fused." Tr. at 681.

-3-

continuous pain that was made worse by forward flexion and standing. *Id.* at 824. These treatment notes also stated that Plaintiff was stable and that her medication provided relief. *Id.* at 826. Additionally, the treatment notes indicated that the radio frequency ablations "basically [gave Plaintiff] a two week vacation from her pain and then it returns." *Id.* In October 2014, Plaintiff reported that a left medial branch rhizotomy performed the previous month provided minimal relief. *Id.* at 815. In November 2014, Plaintiff underwent a right medial branch rhizotomy. *Id.* at 807.

### B. Medical Evidence: Mental

Plaintiff began treating with Samuel Nigro in February 2010 for attention deficit disorder, panic attacks, and "superimposed on chronic back pain treated by others."[4] Tr. at 231. Mr. Nigro stated that Plaintiff had been stable on Xanax, Adderall, and Ambien, and that she "struggle[d] with many issues, including the guardianship of her daughter." *Id.* In August 2012, Plaintiff was told by a pharmacy that Mr. Nigro surrendered his medical license and that none of her medications could be refilled.[5] *Id.* at 247.

In January 2013, Plaintiff was evaluated at the Center for Families and Children. Tr. at 561. Treatment notes indicate that she: had high anxiety related to normal life stressors; experienced panic attacks resulting in tightness in her chest and shortness of breath; suffered from back pain; and was "able to shop and come to appointments but she avoid[ed] public places [due to] anxiety being around strangers." *Id.* Plaintiff stated that she had taken or was taking Adderall and Xanax to help with her attention and keep her calm, respectively. *Id.* at 562. Further, Plaintiff indicated that she had been sober from alcohol for four years and sober from crack-cocaine for eight years. *Id.* at 563. Plaintiff stated that she had three arrests/charges, most recently for welfare fraud, for which she was on probation, and that she had three driving under

---

[4]Mr. Nigro held a valid medical license at that time. *See* Tr. at 231.

[5]The ALJ stated that Mr. Nigro's practice was shut down due to "inappropriate prescribing." *Id.* at 24.

the influence ("DUI") charges.[6] *Id.* at 565. An initial diagnostic impression was issued, indicating that Plaintiff suffered from panic disorder without agoraphobia, major depressive disorder (recurrent, mild), and post traumatic stress disorder. *Id.* at 567. Plaintiff was assigned a global assessment of functioning ("GAF") score of fifty-eight. *Id.*

In February 2013, it was noted that Plaintiff continued to have "mood issues," and that she described her mood as depressed. Tr. at 573. Accordingly, Plaintiff was prescribed Paxil, and she reported that the Paxil was "very helpful" in March 2013. *Id.* at 573, 577. Plaintiff also indicated that her anxiety continued to be an issue, and her Paxil dosage was increased. *Id.* at 577. In April 2013, Plaintiff's request to reinstate her prescription for Adderall was denied as she did not meet the criteria for attention deficit hyperactive disorder ("ADHD"). *Id.* at 596. Also at this time, Plaintiff indicated that she lived with a roommate, had insurance, and "work[ed] cleaning houses." *Id.* The Mental Status Questionnaire completed in April 2013 stated that Plaintiff: presented with a neat and clean appearance; displayed speech that was normal in rate, rhythm, and volume; had moderate to severe impairments in concentration and short-term memory, but no impairment in abstract reasoning or intelligence; and had mild impairment in remembering instructions if complicated, but could follow directions. *Id.* at 589. The questionnaire also stated that Plaintiff lacked insight into mental health issues and subsequently had mild impairment in her judgment, noting that "[Plaintiff] verbalized depressive [and] anxiety symptoms[,] but then state[d] 'it is my ADHD.'" *Id.*

A Daily Activities Questionnaire prepared in August 2013 stated that Plaintiff: lived independently; had difficulty following instructions and "remembering things," which resulted in conflict with supervisors; and exhibited paranoia and poor stress tolerance. Tr at 671. A second Mental Status Questionnaire, also completed in August 2013, indicated that Plaintiff: was neat, clean, and appropriately dressed; had severely impaired short-term memory and ability to concentrate; had moderate insight and poor judgment; was struggling to maintain concentration

---

[6]Plaintiff's statements are unclear insofar as she stated that she had three arrests or charges, but then indicated that she had an adult legal history of a welfare fraud charge as well as three DUI charges. *See* Tr. at 565.

-5-

and persistence at tasks, and with completing tasks in a timely manner; and would react poorly to work pressures, causing increased anxiety that may elevate to panic attacks. *Id.* at 677-78.

### C. Testimonial Evidence

On examination by the ALJ, Plaintiff testified that she did "basically nothing" in terms of performing chores; rarely cooked meals for herself; did not do her own laundry or help with the laundry; performed only "very, very light" cleaning; did not assist with grocery shopping; got together with friends "not very often at all"; and did not belong to any clubs or organizations.[7] *See* Tr. at 39-42. Plaintiff testified that her main obstacle preventing employment was her back pain. Tr. at 47. Continuing, Plaintiff indicated that she laid down throughout the day due to back pain and that her sleep was disrupted due to severe pain, and that she spent a large portion of her day from 9:00 A.M. to 5:00 P.M. lying down or sitting in a recliner. Tr. at 51. Plaintiff estimated that she: was able to walk for fifteen to twenty minutes at an average pace before needing to sit down; could stand for fifteen to twenty minutes; and could not lift more than ten pounds. *Id.* at 52-53. Next, Plaintiff testified that bending impacted her back pain and quality of life, and described problems with both hands that impaired her ability, for example, to send text messages, use a remote, and hold a book. *Id.* at 54-55. Plaintiff stated that she was irritable, stressed, and depressed. *Id.* at 54. Further, Plaintiff testified that she did not want to shower, wake up, or see or talk to others. *Id.*

After questioning Plaintiff, the ALJ posed several questions to a vocational expert ("VE"). First, the ALJ asked the VE to consider a person with the same age, education, and past work as Plaintiff who was able to: occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push and pull insofar as her lift and carry limitations allowed; occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds; occasionally balance,

---

[7] Both parties provide limited recitations of the relevant portions of Plaintiff's testimony presented at the hearing conducted on February 18, 2015. *See* ECF Dkt. # 14 at 5-6; ECF Dkt. #17 at 2-3. While Plaintiff's testimony is certainly relevant to the legal issue presented herein, the undersigned agrees with the parties that a lengthy recitation of Plaintiff's hearing testimony is not necessary for the purpose of resolution of this case.

stoop, kneel, crouch, and crawl; occasionally engage in repetitive use of the left hand for fine manipulation; and perform simple to complex repetitive tasks consistent with unskilled and semi-skilled work without fast pace and with infrequent change, where the changes are well explained and with no direct work with the general public (*i.e.*, customer service work). Tr. at 59. Further, the ALJ explained that the hypothetical individual "must avoid all exposure to hazards, in that they must avoid unprotected heights." *Id.* The ALJ then asked whether this hypothetical individual would be able to perform Plaintiff's past work. The VE responded in the negative. *Id.* at 60. However, the VE did indicate that there would be jobs available for this hypothetical individual, such as an inspector and hand packager, mail clerk, or paint spray inspector, among other jobs. *Id.* The ALJ then asked whether jobs would exist for this hypothetical individual if chronic pain caused the individual to be off-task twenty percent of the time. *Id.* The VE responded in the negative. *Id.*

The ALJ then posed a second hypothetical individual with the same limitations as the first except that this individual was limited to occasionally lifting and carrying ten pounds, frequently lifting and carrying five pounds, and standing for two hours in an eight-hour workday. Tr. at 61. The VE indicated that such an individual could not perform Plaintiff's past work, but could perform work as a bonder, touch-up screener, and document preparer, among other jobs. *Id.* at 62. The ALJ then added the condition that this second hypothetical individual would be off-task twenty percent of the time. *Id.* The VE stated that no jobs would be available for such an individual. *Id.*

Plaintiff's counsel then added the limitations of sedentary work with the additional limitation of occasional fine and gross manipulation. Tr. at 63-64. The VE testified that no jobs would be available for such an individual. *Id.* at 64. Next, Plaintiff's counsel asked if jobs would be available if the hypothetical individual needed additional breaks to lay flat to relieve lower back pain. *Id.* at 64-65. The VE testified that the additional breaks would not be tolerated. *Id.* at 65. Following the questioning of the VE by Plaintiff's counsel, the ALJ concluded the hearing. *Id.* at 65-66.

## III. **RELEVANT PORTIONS OF THE ALJ'S DECISION**

After holding the hearing on February 18, 2015, the ALJ issued a decision on April 16, 2015. Tr. at 13. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 20, 2012, the date of her application for SSI benefits. *Id.* at 18. Continuing, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (lumber and cervical), osteoarthritis, obesity, hypertension, affective disorder (depressive disorder), anxiety disorder (panic attacks without agoraphobia, anxiety disorder not otherwise specified), and substance abuse disorder (alcohol abuse in remission). *Id.* Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ found that Plaintiff had mild restrictions in her activities of daily living since she: shopped and went to appointments; lived with friends; prepared food with her daughter; shopped with her daughter; and was able to drive. Tr. at 19. According to the ALJ, Plaintiff had moderate difficulties in social functioning and concentration, persistence, or pace, and had not experienced any episodes of decompensation of extended duration. *Id.* at 20.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), meaning that she: was able to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday; had an unlimited ability for pushing and pulling "other than showing for lift and/or carrying"; could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; was limited to occasional repetivite use of the left hand for fine manipulation; must avoid all exposure to hazards such as unprotected heights; and, mentally, could perform simple to complex repetitive tasks consistent with unskilled and semi-skilled work with no fast pace, with infrequent change and where changes are well explained. *Id.* at 20-21. The ALJ also included the limitation that Plaintiff could not have direct work with the public, *i.e.*, customer service type work. *Id.* at 21. Continuing, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause

-8-

the alleged symptoms, however, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. *Id.*

Following the RCF and credibility determinations, the ALJ stated that Plaintiff was unable to perform any past relevant work, was a younger individual on the date the application was filed, and had at least a high school education and was able to communicate in English. Tr. at 25. The ALJ determined that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on these findings, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since September 20, 2012, the date her application was filed. *Id.* at 26.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI. LAW AND ANALYSIS

Plaintiff asserts that the ALJ's decision finding that she was not disabled is not supported by substantial evidence because the ALJ's credibility analysis is flawed. ECF Dkt. #14 at 7.

-10-

Specifically, Plaintiff claims that the ALJ is not clear in her decision and failed to provide specific reasons to discredit Plaintiff. *Id.* at 9. Plaintiff then summarizes the portion of the ALJ's decision immediately following the finding that she was not fully credible, and avers that the ALJ failed to explain how the portions of the record discussed therein detracts from her credibility.

Next, Plaintiff cites 20 C.F.R. § 404.1529(c)(2) for the proposition that Defendant:

> [W]ill not reject [a claimant's] statements about the intensity and persistence of [the claimant's] pain or other symptoms or about the effect [the claimant's] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] symptoms.

ECF Dkt. #14 at 10. Plaintiff asserts that in addition to the objective medical evidence, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for pain relief; (6) any measures used to relieve the pain; and (7) functional limitations and restrictions due to the pain. *Id.* at 10-11 (citing 20 C.F.R. § 404.1529(c)(3)).

After discussing the regulations, Plaintiff claims that the ALJ did not accurately assess her complaints of disabling pain insofar as the ALJ: failed to adequately discuss the type, dosage, or effectiveness of any medication; made a blanket statement that Plaintiff "got relief from medication," which was "not entirely accurate"; did not properly consider the measures Plaintiff used at home and in treatment to relieve the pain; and ignored Plaintiff's statements that she is never pain free, her pain increases with activity, and that she must lie down to relieve her lower back pain. ECF Dkt. #14 at 11. Plaintiff also asserts that the ALJ ignored her consistent statements relating to her reported symptoms. *Id.* at 11-12.

Continuing, Plaintiff recognizes that there is case law indicating that the ALJ is best equipped to evaluate a claimant's credibility, but notes that the ALJ is not permitted to make credibility determination based on intangible or intuitive notions about an individual, and that a credibility finding must be supported by substantial evidence. ECF Dkt. #14 at 12 (citing

-11-

*Rogers*, 486 F.3d at 247-48; *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)).

Plaintiff states that when an ALJ decides to discredit a claimant, the ALJ's written decision:

> [M]ust contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight.[8]

*Id.* According to Plaintiff, "[i]n short, the ALJ's decision simply does not contain specific reasons as required." *Id.*

Defendant contends that the ALJ's credibility analysis was supported by substantial evidence. ECF Dkt. #17 at 8. First, Defendant acknowledges the seven factors, also discussed by Plaintiff, that an ALJ must consider when evaluating the intensity, persistence, and limiting effects of any symptoms once it has been determined that a claimant has an underlying medical impairment that could be reasonably expected to produce the claimant's symptoms. *Id.* at 8-9. Defendant correctly indicates that the ALJ acknowledged this two-step process in her decision. *Id.* at 9. Continuing, Defendant states that after recognizing this two-step process, the ALJ accurately summarized Plaintiff's hearing testimony, course of treatment, and the effects of the treatment, as well as statements made by a nurse practitioner about Plaintiff's ability to perform work-related mental tasks. *Id.*

Defendant then indicates that the ALJ next considered the Daily Activities Questionnaires completed by Plaintiff's case manager, which included concerns about her welfare fraud case. *Id.* at 9-10 (citing Tr. at 667-68, 671). Notably, according to Defendant, the questionnaires indicate that Plaintiff lived independently, frequently socialized with friends and family, and attended Alcoholics Anonymous meetings. *Id.* at 10. Defendant claims that these activities are in contrast to Plaintiff's hearing testimony indicating that she did not visit with friends very often and mostly communicated by telephone. *Id.* Specifically, Defendant points to the notation made by Plaintiff's case manager that she visits with friends "every day." Defendant also notes Plaintiff's admission that she cooked, cleaned, and washed clothes with some help

---

[8]Plaintiff provides no citation for this quotation. Presumably Plaintiff intended to attribute the quotation to SSR 96-7p, as the language of the quotation is lifted from the Ruling.

-12-

from her daughter, despite providing testimony denying doing laundry and stating that she only rarely cooked. *Id.* After stating these alleged inconsistencies Defendant asserts that the ALJ could properly consider daily activities as one factor in the evaluation of subjective complaints. *Id.* (citing *Temples v. Comm'r of Soc. Sec.*, 515 Fed.Appx. 460, 462 (6th Cir. 2013)).

Next, Defendant states that the ALJ noted that Plaintiff did not submit any opinion from a treating physician, and thereafter cited progress notes showing the Plaintiff had reported some relief from her pain with medication and that her pain had dropped from 9/10 to 7/10 after a radio frequency ablation procedure. ECF Dkt. #17 at 10. Additionally, Defendant indicates that the ALJ noted that Plaintiff said that her medication relieved her pain by forty percent, and that, according to treatment notes, Plaintiff had no pain for two weeks following a radio frequency ablation procedure. *Id.*

Defendant avers that it was appropriate for the ALJ to consider the effects of treatment in deciding whether to fully credit Plaintiff's hearing testimony regarding her symptoms, stating that when the ALJ finds contradictions among the medical reports, the ALJ may properly discount the credibility of the claimant. ECF Dkt. #17 at 10-11 (citing *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 822 (N.D. Ohio Sept. 28, 2009) (internal citation omitted)). Further, Defendant asserts that the ALJ accorded great weight to the opinions of the state agency consultants, who considered the available record, including Plaintiff's written statements about her symptoms, and found that she was capable of gainful work. *Id.* at 11. Defendant notes that the state agency consultants found that Plaintiff's statements regarding her symptoms were only "partially credible." *Id.* Finally, Defendant asserts that the credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ, and that it is the ALJs function, rather than the Court's function, to determine credibility issues. *Id.* (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).

Plaintiff's argument is without merit. Essentially, Plaintiff argues that the ALJ did not explain why she found her less than fully credible. Here, the ALJ found Plaintiff to not be entirely credible, and then proceeded into a lengthy and thorough discussion of the evidence

presented in Plaintiff's claim. *See* Tr. at 21-24. Plaintiff repeatedly asserts that the ALJ failed to explain, during her discussion of certain pieces of evidence, why each piece of evidence detracted from Plaintiff's credibility. *See* ECF Dkt. #14 at 9-10. This assertion ignores the half of the ALJ's RFC discussion relating to Plaintiff's activities of daily living, which indicated that Plaintiff: lived in a house with her daughter and a roommate; got along with family, friends, neighbors, former employers, supervisors, and co-workers; went out to eat; had started a new job; prepared food with her daughter; performed household chores with her daughter; shopped with her daughter; and was able to drive. *See* Tr. at 23-24. Further, the portion of the ALJ's decision not addressed by Plaintiff includes a discussion of her: addiction to Adderall, and her problems relating to missing appointments and then complaining about not having her Xanax refilled without an appointment; legal difficulties consisting of a welfare fraud case; shared parenting responsibilities and that she was responsible for fifty percent of her daughter's financial needs; and reports of pain relief from her medications and radio frequency ablation procedures. *See id.*

Plaintiff's activities of daily living, as demonstrated from the evidence, differ significantly from the testimony she presented at the hearing. For example, at the hearing Plaintiff testified that she: did "basically nothing" in terms of performing chores; rarely cooked meals for herself; did not do her own laundry or help with the laundry; performed only "very, very light" cleaning; did not assist with grocery shopping; got together with friends "not very often at all"; did not belong to any clubs or organizations; spent a large portion of her day laying down or sitting in a recliner; was "absolutely" limited in her ability to walk; only left her house for medical appointments; and did not want to talk to anyone. *See* Tr. at 39-42, 51-52, 54. Plaintiff's activities of daily living are inconsistent with her hearing testimony insofar as she testified that she did not perform chores or do laundry, yet the medical evidence indicates that she did perform chores around the house with her daughter. Further, Plaintiff offered testimony that she only left her house for appointments and did not want to be around others, however, the medical evidence shows that she got along with family, friends, neighbors, former employers, supervisors, and co-workers, and interacted with others frequently. The ALJ discussed the

-14-

testimony provided by Plaintiff, and then the evidence suggesting that she was not as limited as she claimed during the hearing. *See* Tr. at 21-24. The reasons why the ALJ found Plaintiff less than credible are apparent from her decision.

Plaintiff further claims that the ALJ: (1) failed to adequately discuss the type, dosage, and effectiveness of any medications taken to alleviate the pain; (2) made blanket statements that "[Plaintiff] got relief from medication," which was "not entirely accurate"; (3) did not properly consider the intensity of Plaintiff's pain, nor the precipitating and aggravating factors or the measures Plaintiff used at home and in treatment to relieve the pain; and (4) ignored Plaintiff's statements indicating that she was never pain free, her pain increased with activity, and she had to frequently lie down to relieve her lower back pain. ECF Dkt. #14 at 11. Plaintiff provides no further argument as to any of these four assertions. *See id.*

Plaintiff's first assertion is simply false. Throughout her discussion of the evidence, the ALJ consistently discussed the types of medications Plaintiff was prescribed, noted increases or decreases in the amount of the medication prescribed, and addressed the effectiveness of the prescriptions. *See* Tr. at 22-24. Plaintiff's second assertion also carries no weight, as Plaintiff did indicate that she got relief from her medication. *See id.* at 22, 24. It is unclear what Plaintiff means when she states that the ALJ's statements were not entirely accurate, since the ALJ's statements were based on Plaintiff's own statements that the medications helped relieve her pain. *Id.* Plaintiff's third assertion is without merit as Plaintiff provides no explanation as to why she believes the ALJ did not properly consider the intensity of her pain, and no support insofar as she claims the ALJ did not consider the precipitating and aggravating factors or the measures Plaintiff used at home in treatment to relieve the pain. Likewise, regarding her fourth assertion, the Plaintiff provides no support for her contention that the ALJ ignored her indications that she was never pain free, her pain increased with activity, and she had to frequently lie down to relieve her lower back pain. Moreover, regarding all four of these assertions, Plaintiff does not point to a single piece of medical or opinion evidence that the ALJ failed to consider.

Finally, Plaintiff claims that the ALJ ignored SSR 96-7p and failed to consider the consistency of Plaintiff's statements. However, for the reasons discussed above, a review of the

-15-

evidence presented in this case does not support Plaintiff's claim that her statements were consistent. Plaintiff has failed to demonstrate that the ALJ erred in her credibility determination. Accordingly, the undersigned recommends that the Court find that the ALJ's decision is supported by substantial evidence.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: May 4, 2017   */s/George J. Limbert*
　　　　　　　　　　　　　　　　　GEORGE J. LIMBERT
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).